**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.: 1:08-CR-31 |
| | ) | |
| LARRY BILLIAN and | ) | |
| ERIN BILLIAN | ) | |

**MEMORANDUM OF OPINION AND ORDER**

This matter is before the court for resolution of the joint Motion to Dismiss filed by

Defendants Larry Billian and Erin Billian on May 9, 2008 (docket at 28), the Motion to Suppress

filed by Defendant Larry Billian on May 8, 2008 (docket at 26),[1] and the Motion for

*Franks* Hearing filed by the defendants on July 31, 2008 (docket at 39). Briefing was completed

on September 17, 2008. For the reasons discussed below, the motion to dismiss is DENIED; a

ruling on the motion to suppress is DEFERRED pending further proceedings as explained below;

and the motion for *Franks* hearing is GRANTED.

**FACTUAL BACKGROUND**

Larry and Erin Billian were charged by way of a three-count Indictment with possession

with intent to distribute marijuana, possession of a firearm in furtherance of a drug trafficking

crime, and maintaining and using a place for the purpose of distributing marijuana. Indictment,

docket at 1. Counts 1 and 2 charge Larry Billian, while Count 3 charges both defendants. *Id*.

The Indictment also contains a forfeiture allegation seeking the forfeiture of several firearms,

ammunition, and currency. *Id*.

---

[1] The motion to suppress was filed by defendant Larry Billian. However, on May 12, 2008, defendant Erin Billian filed a motion to join in that motion to suppress. Docket at 30. The court granted the motion to join the same day. Docket at 31. Consequently, the motion to suppress applies to both defendants.

On February 9, 2008, Fort Wayne police officers executed a search warrant at the Billian's residence on Bent Willow Drive. In the course of executing the search warrant, police discovered marijuana and firearms on the premises. The charges in the Indictment stemmed from that search and seizure. According to the defendants, "the Affidavit which led to the search warrant does not state facts sufficient to show probable cause. The Affidavit in support of the search warrant is based upon uncorroborated hearsay information, is defective on its face and lacks any sufficient basis upon which a finding of probable cause can be made." Motion to Suppress, pp. 1-2. The defendants also argue that "the information . . . in the Affidavit is stale and unreliable." *Id*., p. 2. The defendants move the court to "quash the search warrant issued and suppress the evidence illegally seized." *Id*.

Their motion to dismiss is based on the same arguments. The defendants contend that the search warrant affidavit, which was prepared and signed by Detective Teresa Smith of the Fort Wayne Police Department, contained "a deliberate falsehood" and "deliberately omitted relevant information." Motion to Dismiss, p. 1. More specifically, the defendants alleged that Detective Smith received false information from an anonymous tipster and that she failed to use due diligence to verify the information the tipster provided before preparing the search warrant affidavit and submitting it to a magistrate. *Id*., p. 2. The defendants contend that these facts warrant a dismissal of this case.

The defendants also filed their motion for a *Franks* hearing, contending that they have made a sufficient showing of certain material deficiencies in the search warrant affidavit that the court should hold an evidentiary hearing to address the issues pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Motion for *Franks* Hearing, p. 1. The defendants incorporated a

memorandum of law into their motion for a *Franks* hearing that provides a much more detailed

factual argument in support of their motion for a hearing and their motion to suppress than do the

prior motions themselves. *See* Motion for *Franks* Hearing and attachments thereto. For

example, the defendants point out that Detective Smith testified in a state court proceeding

concerning the investigation into the Billian's alleged drug activities, and her preparation of the

search warrant affidavit. *Id*., p. 2. The court proceeding was held on June 16, 2008, and was a

Children in Need of Services hearing ("CHINS" hearing) that apparently involved the Billian's

children. *Id*. The defendants attached to their motion and memorandum portions of the

transcript from that proceeding containing relevant excerpts of Detective Smith's testimony. *Id*.,

Exhibit C. Detective Smith testified that she had received a tip from an individual who alleged

that Larry Billian was a "big dealer" who "deals cocaine and marijuana" and "drives a brand new

caddy." *Id*., Exhibit B. The tip also makes reference to a vehicle identified as a "black/blue"

"Escalade/Buick" and lists the Billian's address on Bent Willow Drive. *Id*. The written

memorialization of the tip contains the date "1/16/2008." *Id*. Detective Smith testified in state

court that she wrote the memo memorializing the tip that was received. *Id*., Exhibit C, p. 28.[2]

Detective Smith testified that it was standard procedure to write up a memo regarding such a tip

"within a week" of receiving it, but that in this instance she did not write the memo within a

week. *Id*., pp. 28-29. According to Detective Smith's testimony at the CHINS proceeding, Fort

Wayne Police began surveillance of the Billian residence "after we received the tip" and that the

---

[2] The page numbers cited by the court are the page numbers assigned to the defendants' brief and exhibits by this court's electronic docketing system and may or may not coincide with the page numbers placed on those documents by defense counsel. The same is true of any briefs and exhibits filed by the government in this case. The page numbers assigned to documents by the court's filing system appear at the top of each page.

"surveillance started in August [2007]." *Id*., p. 22. Detective Smith testified that the

surveillance "went throughout the time until we actually obtained the Search Warrant in

February [2008]." *Id*., p. 23. Detective Smith testified that during the surveillance of the Billian

home, police "didn't observe really all that much traffic at all." *Id*. She also testified that police

conducted two "trash runs" at the Billian residence–the first one taking place on January 16,

2008–and seized certain items from the defendants' trash during those searches. *Id*., p. 24. A

small amount of a "green leafy substance" that later tested positive as marijuana was discovered

in the trash along with some plastic sandwich type baggies. *Id*. Detective Smith also testified

that during the surveillance, police saw a dark colored Escalade parked at the Billian residence

and that a white Cadillac was seen there once. *Id*., pp. 25-26. However, Smith admitted that

police did not get a license plate number for the white Cadillac and had no idea whose vehicle it

was or to whom it was registered. *Id*., p. 26.

The defendants argue that Detective Smith's courtroom testimony demonstrates that there

was inaccurate information contained in the search warrant affidavit, that the information

contained therein was unreliable, and that the information was stale. For example, the

defendants point out that the search warrant affidavit itself states that the tip regarding Larry

Billian was received on August 27, 2007, even though Detective Smith did not write her memo

about the tip until five months later (in an apparent departure from standard procedure). *Id*., p. 2;

*see* Exhibit A, p. 11 (Search Warrant Affidavit). Also, the affidavit states that the tip included

information that Larry Billan owned a white Cadillac, even though Detective Smith testified in

the CHINS proceeding that police only observed a white Cadillac at the Billian residence on one

occasion and had no idea to whom it belonged. *Id*., p. 5; *see* Exhibit A, p. 11. And, Detective

4

Smith stated in her affidavit that police conducted searches of the Billian's trash cans in order to corroborate the information provided by the anonymous tipster that Larry Billian was a "big dealer." Exhibit A, pp. 12-13. Those trash searches were conducted on January 16, 2008, and February 6, 2008. *Id*. During the first search, police recovered "less than one gram" of marijuana and during the second search they recovered "2.8 grams" of marijuana. *Id*. Also discovered during the trash runs were an "empty box" of plastic sandwich bags (during the first search and seizure) and a large plastic garbage bag with traces of marijuana residue (during the second search and seizure). *Id*. Police also found (perhaps not surprisingly) and seized "several pieces of mail with the name[s] Larry Billian and Erin Billian" on them. *Id*., p. 13. The defendants point out that these trash searches took place "5 and 6 months after the anonymous tip[.]," arguing that this fact supports their contention that the search warrant affidavit was based, at least in part, on stale information. The defendants also argue that the evidence allegedly seized during the trash runs–that is, very small amounts of marijuana–is consistent with personal use of the drug rather than evidence of a "big dealer." *Id*., p. 3. Finally, police discovered "an envelope with the name of Sam's Storlock Self Storage" located on it. *Id*. Police investigated and discovered that Larry Billian rented a storage unit at Sam's Storlock Self Storage. Police went to the storage business with trained K-9 drug sniffing dogs but the dogs "did not alert positively according to their training[.]" that the unit rented by Billian contained the scent of drugs. *Id*., p. 13. In other words, the police did not recover any drugs or evidence of drugs from the storage unit.

Also in the search warrant affidavit, Detective Smith recounted that in August and September of 2006, a Fort Wayne Police officer, through a confidential informant, conducted

two controlled drug buys from an individual named Octavian Reynolds. Exhibit A, p. 12.

Following the second controlled buy, officers pulled Reynolds over while he was driving a white

Cadillac that police state was registered to Larry Billian. *Id*. In that vehicle, police discovered

drugs, scales, and "paperwork in the names of Reynolds and Billian." *Id*. Detective Smith states

in her affidavit that "after receiving the tip" and during the surveillance of the Billian home, she

spotted a white Cadillac parked at the home. *Id*. This is the vehicle that Detective Smith

testified was never identified as belonging to either Larry or Erin Billian. The defendants argue

that the fact that Reynolds was driving a white Cadillac registered to Larry Billian about one

year *before* Detective Smith received the anonymous tip about him being an alleged drug dealer

is a fact that is too remote and stale to support a finding of probable cause. Motion for

*Franks* Hearing, p. 4.

In addition to challenging the truthfulness of the facts alleged in the search warrant

affidavit, the defendants also argue that the affidavit contains no allegations at all concerning the

location of the Billian's trash cans when police searched them and seized certain evidence. *Id*.,

p. 8. The defendants point out, correctly, that if the trash bins searched were within the

"curtilage" of the Billian home, the searches of them may have violated the defendants' Fourth

Amendment right against unreasonable search and seizure. *Id*. The defendants are correct that

the affidavit omits any recitation of the location of the trash bins at the time of the searches. For

all of these reasons, the defendants move to dismiss this case, suppress evidence in the case,

and/or for an evidentiary hearing to resolve the issues raised by their motions.

## DISCUSSION

1.  **Motion to Dismiss.**

In the motion to dismiss this case, the defendants, employing the arguments just outlined above, argue that the evidence used to secure the search warrant was woefully inadequate to support a finding of probable cause. Motion to Dismiss, p. 1. The defendants contend that "the Fort Wayne Police Department did not have a reasonable, articulable suspicion concerning drugs located at [the Billan residence]." *Id*. The defendants ask the court to dismiss the case on those grounds. *Id*., p. 3. The court notes, however, (and the government points this out in its response brief) that in their motion to dismiss the defendants also state that "[u]nder these assertions, the IV Amendment [sic] requires that the District Court hold an evidentiary hearing to determine the validity of the [search warrant]." *Id*., p. 2.

The government argues that the defendants' motion to dismiss, despite its title, is actually nothing more than a duplicate motion for a *Franks* hearing. The government points to the fact that the defendants state in their motion that the court should hold an evidentiary hearing, as just discussed. Also, the government argues that the only challenge the defendants are making in the motion is a challenge to the truthfulness or legitimacy of the search warrant affidavit. Government's Motion to Dismiss Defendants' Motion for Evidentiary Hearing, p. 2. As the government correctly points out, when a defendant challenges the facts contained within a search warrant affidavit, "the court can consider only the information contained in the 'four corners' of the affidavit[.]" and that such allegations do not warrant an evidentiary hearing. *Id*., p. 1 (citing *United States v. Brack*, 188 F.3d 748 (7th Cir. 1999)).[3]

---

[3] The government filed its Motion to Dismiss Defendants' Motion for Evidentiary Hearing on May 20, 2008. Docket at 32. The motion also constituted a response in opposition to the defendants' motion to dismiss. For the reasons discussed above, the government moved to dismiss the defendants' request for an evidentiary hearing on the legitimacy of the search warrant affidavit. The following day, after reviewing the motions filed by both sides, this court

The court concludes that the motion to dismiss must be denied. First, it does, in fact,

raise only a challenge to the validity of the affidavit and the subsequent search warrant. If the

defendants' arguments were accepted, the remedy to which they would be entitled would be a

suppression of some or all of the evidence seized by police, not a dismissal of the indictment.

Second, the record as it stands reveals that there are–at the very least–issues of fact concerning

the assertions contained in the search warrant affidavit and whether they supported a finding of

probable cause for the issuance of a search warrant. The proper procedure for resolving these

issues would be an evidentiary hearing, as the defendants have requested, not a complete

dismissal of the case. Put another way, the arguments of the parties, along with some supporting

exhibits, are all that is before the court at the present time and these do not constitute a basis for

dismissal of the indictment. Accordingly, the defendants' motion to dismiss is DENIED.

### 2. **Motion to Suppress and Motion for *Franks* Hearing.**

The defendants' motion to suppress and their motion for an evidentiary hearing pursuant

to *Franks v. Delaware* are intertwined in terms of both fact and law. The court concludes after

reviewing the parties' briefs that the evidence presented at a *Franks* hearing may dictate how the

motion to suppress should be resolved. However, until that evidence is presented and considered

by the court, any ruling on the motion to suppress shall be deferred.

---

vacated the evidentiary hearing that had been scheduled after the defendants filed their motion to suppress and converted it to a status and scheduling conference. Docket at 33. That status conference was held on May 23, 2008, at which time the court ordered additional briefing from the defendants and the government. Docket at 34. In the subsequent briefs that were filed, neither the defendants nor the government directly discussed the motion to dismiss, concentrating instead on the motion to suppress and the defendants' request for a *Franks* hearing. This could indicate that the defendants concede that the motion to dismiss was, in actuality, just a duplicate of, or a supplement to, their motion for a *Franks* hearing. Still, the motion to dismiss is still pending as exactly that, and the court concludes that it must be denied.

The government contends that the defendants are not entitled to a *Franks* hearing at all. The government points out that in order to obtain a *Franks* hearing, a defendant challenging the sufficiency of a warrant submitted for the purpose of obtaining a search warrant must make a substantial showing that the affidavit contained some false material statements, the affiant made this false statement intentionally or with reckless disregard for the truth and that the false statement was necessary to support a finding of probable cause. Government's Opposition to Defendants' Motion for Franks Hearing and Request for Denial of Motion to Suppress, docket at 40, pp. 1-2 (citing *United States v. Lowe*, 516 F.3d 580, 584 (7th Cir. 2008)).

The government contends that the defendants have failed to make the requisite showing that would entitle them to a *Franks* hearing or to a suppression of any evidence. The government argues that the assertions contained in Detective Smith's affidavit are more than sufficient to establish probable cause, even in the absence of the alleged omissions or alleged falsehoods the defendants argue are contained in that affidavit. *Id.* For instance, the government maintains that the tip received by police identified Larry Billian as a large scale dealer of marijuana and cocaine, that he lived on the north side of Fort Wayne, was married to a woman named Erin, and drove a black or blue Cadillac Escalade. *Id.*, p. 2. According to the government, police used this information to locate Billian's home, conduct surveillance of the home, and conduct two searches of trash bins allegedly belonging to the defendants. *Id.*, pp. 2-3. The government also states in its brief that "[t]he tip was dated January 16, 2008." *Id.*, p. 2. The government argues that the surveillance of the Billian home revealed a dark colored Cadillac Escalade at the property, which police learned was registered to Erin Billian; that a white

9

Cadillac was seen parked at the home on one occasion; and that the trash bin searches uncovered evidence of marijuana. *Id*. The government maintains, therefore, that the police had sufficient probable cause to obtain the search warrant for the Billian's home. *Id*., pp. 2-3. The government argues that any mistakes or errors in Detective Smith's affidavit are not material and, therefore, do not render the affidavit or the subsequently issued search warrant invalid. For example, the government acknowledges that the anonymous tip was received on or about August 27, 2007, while the written memorialization of the tip was not prepared until January 16, 2008. However, the government argues that "this statement is not a material false statement and the existence of probable cause did not rise and fall on this statement." *Id*., p. 3. The government then addresses the issue of the trash searches and states that an individual has "no reasonable expectation of privacy in garbage left for collection in an area accessible to the public." *Id*., p. 4 (citing *California v. Greenwood*, 486 U.S. 35 (1988)). Tellingly, the government does not address the defendants' contention that the search warrant affidavit made no mention of the Billian's trash bins being located *outside* the curtilage of their home.

The government also points out that while the search warrant affidavit states that the anonymous tipster said that Larry Billian also owned a white Cadillac, while the written memo concerning the tip makes no mention of that fact, is likewise immaterial to a finding of probable cause. *Id*., p. 4. According to the government, even if any reference to the date of the tip and any reference to a white Cadillac are removed from the search warrant affidavit, the remaining information would still support a finding of probable cause and be sufficient to support the issuance of a search warrant. *Id*.

The government claims that once police received the anonymous tip, they proceeded

properly to corroborate the information provided. Police were told that an individual named

Larry Billian was a drug dealer, that he lived on the north side of Fort Wayne, that he owned a

Cadillac Escalade, and that he was married to a woman named Erin. Police then found evidence

of marijuana in the Billian's trash. The government contends that this evidence was sufficient to

establish probable cause. *Id*., pp. 4-6. Finally, as to the issue of staleness, the government

contends that even if the discrepancy over the date of the anonymous tip is taken into account

(the government contends that this discrepancy was most likely the result of a scrivener's error

in Detective Smith's memo), the rest of the corroborating evidence (i.e., the evidence that Larry

Billian lived on the north side of town and owned an Escalade, and that marijuana was found in

his trash on two occasions in January and February 2008) was *not* stale and was sufficient for the

issuance of the search warrant that was also issued in February 2008. *Id*., p. 7.

The government makes some arguably valid points. Nonetheless, there are some

troubling questions concerning the search warrant affidavit, including the confusion over the

date the tip was received, the relevance of the white Cadillac, and the unresolved issue of the

location of the Billian's trash bins when they were searched. It is also not entirely clear what the

significance of the controlled drug buys from Octavian Reynolds, which took place more than a

year earlier, were to the establishment of probable cause. The assertions concerning Reynolds

and the drug buys that took place in 2006 (some 16 or 17 months before the issuance of the

search warrant in this case) were included in Detective Smith's affidavit. While they were

hardly the sole basis for probable cause, they were included in the affidavit for the apparent

purpose of bolstering the other assertions contained therein.

In their reply brief, the defendants point out that Detective Smith was questioned about

11

the discrepancy concerning the date of the anonymous tip and could offer no explanation for it. Defendants' Reply to Government's Opposition to Motion for *Franks* Hearing, docket at 41, p. 2. The defendants state that "[t]he government surmises that the date on the tip is a scrivener's error, a conclusion reached by the government not based upon any facts." *Id*., p. 1-2. The defendants conclude by arguing that the evidence they have presented, including their factual assertions, the search warrant affidavit itself, and the portions of Detective Smith's testimony in the state court CHINS proceeding, combine to meet their burden of establishing that they are entitled to an evidentiary hearing to address the issues they raise in their motion for hearing and their motion to suppress.

The U.S. Supreme Court has held that "search warrant affidavits must be presumed to be valid." *United States v. McAllister*, 18 F.3d 1412, 1416 (7th Cir. 1994) (citing *Franks*). In order to be entitled to a *Franks* hearing, the defendant's attack on the search warrant "must be more than conclusory and must be supported by more than a mere desire to cross-examine the affiant." *McAllister*, 18 F.3d at 1416. As the Supreme Court wrote in *Franks*, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence adequately explained." *Franks v. Delaware*, 98 S.Ct. 2684-85. In this case, the defendants have raised issues the significance of which ultimately can only be resolved in an evidentiary hearing. Whether some or all of the alleged misrepresentations the defendants claim were present in Detective Smith's affidavit were deliberate, or included with reckless disregard

12

as to their truth, or whether, as the government claims, any such errors were simply harmless mistakes and immaterial to a finding of probable cause, can only be determined following an evidentiary hearing that will enable the court to hear and assess the testimony of relevant witnesses, including but perhaps not limited to Detective Smith, who drafted and submitted the affidavit to the state court magistrate. Therefore, the court concludes that any ruling on the defendants' motion to suppress will be deferred pending further proceedings and that their motion for an evidentiary hearing should be granted.

## CONCLUSION

For the reasons discussed herein, the defendants' motion to dismiss is DENIED; the defendants' motion to suppress is DEFERRED pending further proceedings; and the defendants' motion for a evidentiary hearing is GRANTED. This evidentiary hearing will be scheduled by way of a docket entry separate from this Order.


Date: October 17, 2008.


   /s/   William C. Lee     
William C. Lee, Judge
United States District Court
Northern District of Indiana